436 A.2d 991

**Joseph A. MALLOY, Jr., Administrator of the Estate of Stanislaus Ploszanski, Deceased, and Joseph A. Malloy, Jr., Guardian of the Estate of Christina Ploszanski, a minor, Appellants,**

**v.**

**GIRARD BANK.**

Superior Court of Pennsylvania.

Argued Sept. 8, 1980.

Filed July 2, 1981.

Reargument Denied Nov. 17, 1981.

C. George Milner, Philadelphia, for appellants.
Earl T. Britt, Philadelphia, for appellee.

Before BROSKY, WATKINS and MONTGOMERY, JJ.

MONTGOMERY, Judge:

This wrongful death and survival action was instituted by the Plaintiff-Appellant as the Administrator of the Estate of Stanislaus Ploszanski, deceased, and Guardian of the Estate of Christina Ploszanski, a minor. The deceased committed suicide in 1971 by shooting himself with a gun which was maintained at the premises of the Defendant-Appellee Girard Bank, the employer of the deceased. It was the theory of the Plaintiff that the Defendant was negligent in allowing the firearm to be in a place accessible to the decedent. The case was tried before a jury, but at the close of the Plaintiff's evidence, the trial judge granted a defense motion for a compulsory nonsuit. Subsequently, a court *en banc* denied the Plaintiff's motion to remove the nonsuit and this appeal followed.

In considering whether a nonsuit was properly entered in any case, our Court must give the Plaintiff the benefit of all of the evidence, resolving all doubts in his favor, and will affirm only in a clear case where there is no doubt as to inferences to be drawn from the evidence. See *West Penn Power Co. v. Bethlehem Steel Corp.*, 236 Pa.Super. 413, 348 A.2d 144 (1975). With that mandate in mind, we will review evidence presented by the Plaintiff in this case.

The record shows that the decedent took his own life on December 17, 1971 when he deliberately shot himself with a gun owned by the Defendant Girard Bank. At the time, the decedent had been employed as a maintenance worker at a branch office of the Bank for approximately four years. The decedent was one of several maintenance employees of Defendant working under the supervision of one Stanley Pickens, the building superintendent. For approximately three years prior to the date of the decedent's death, Pickens had followed the practice of storing a loaded .38 calibre revolver in the unlocked locker in his basement office at the Bank. The revolver was used each evening by the Bank's

night security guards. On the date of his death, the decedent went into Pickens' office, removed the gun from the locker, and shot himself with it.

At the time of his death, Ploszanski was approximately 59 years old. He was a native of Poland who had apparently emigrated to the United States after World War II. During that war, he had apparently been a prisoner in a concentration camp, and had lost track of his wife and children. After his arrival in the United States, the decedent began living with a woman who assumed the name of Eleanor Ploszanski, although the two were never married. They had a child, and raised it, while living together until the day of the decedent's death.

The Plaintiff's case, in part, was based upon the claim that the decedent suffered psychological aberrations, including suicidal tendencies. This situation was blamed, in part, upon the decedent's discovery in the mid 1960's that his legal wife and children were still alive in Poland. The Plaintiff presented evidence that the deceased had often expressed a fear of Germans and a fear of being deported to Europe.

Plaintiff's case was presented chiefly on the testimony of two witnesses: Stanley Pickens, the Bank's supervisor, and Eleanor Ploszanksi, who had lived with the decedent for several years and was the mother of his child. Mr. Pickens testified that Stanley Ploszanski was a cooperative and reliable worker who had a good relationship with other employees. While Pickens testified that on occasion, while at work, the deceased expressed a fear of deportation, or of Germans, the witness said that he had no notion of what the decedent meant by such statements. Pickens testified that he never saw anything unusual in the decedent's behavior during the four years he supervised him, and also did not notice any conduct which indicated any intent on the part of the decedent to commit suicide. He testified that on the day of the suicide, he saw Stanley Ploszanski working in his usual manner and that the deceased gestured to him with a smile shortly before the shooting.

Eleanor Ploszanski testified to the history of her family life with the deceased over several years. She described him as a mild-mannered man, who enjoyed a good relationship with their daughter, and who was a responsible head of their household. She further testified, however, that he had and repeatedly expressed his fears of Germans and deportation for many years. She related that in August 1971, the deceased had taken an overdose of a drug known as seconal, which had been prescribed for the decedent's heart condition. She testified that she had communicated this information to Mr. Pickens.

In addition to the foregoing, the Plaintiff presented the testimony of an actuary, which resulted in a stipulation by counsel that the actuary would testify to an economic loss of just over $37,000.00 as a result of the death of Stanley Ploszanski. Further, an attorney testified to his representation of various heirs of the decedent, who were living in Poland. The Plaintiff also introduced records of an admission by the decedent to a Philadelphia hospital, in August, 1971, resulting from the decedent's ingestion of an overdose of the seconal medication. Finally, the Plaintiff introduced notes from a nurse on the staff of the Defendant, which notes were retained by the Defendant as part of its files on the decedent. These notes contained a brief mention that the decedent had been seen by a psychiatrist in April, 1971. After the last notation, which was that the decedent had shot himself at work, the nurse's note indicates merely that the decedent had some delusions about being deported approximately one month before his death.

The Plaintiff-Appellant relies upon the case of *Kuhns v. Brugger*, 390 Pa. 331, 135 A.2d 395 (1957) to establish that his evidence was sufficient to create a jury question on the issue of the Bank's negligence, and to support his claim that a nonsuit was erroneously granted in this case. *Kuhns* appears to be a leading case in establishing the standard of care of one in the possession of firearms. In that case, a twelve year old boy was shot and wounded by his cousin, another twelve year old, with a loaded pistol maintained by

their common grandfather in his residence. The Court, in evaluating the liability of the defendant grandfather, held that the possessor of a loaded firearm holds a duty of exercising not simply ordinary, but extraordinary care, so that no harm may be visited upon others. In that case, the evidence showed that the defendant's grandchildren were frequent visitors and guests at the defendant's cottage. The grandchildren had free access to all areas of the residence including the defendant's bedroom, where the defendant maintained a loaded pistol, and at least one other firearm. It was held that the defendant's act in permitting this weapon, with its deadly potentialities, to remain in a place frequented by young children, showed an absence of extraordinary care and constituted negligence on his part.

In reaching its conclusions in *Kuhns*, the Supreme Court relied significantly upon § 308 of the Restatement of the Law of Torts, which declared: "It is negligent to permit a third person to use a thing or to engage in an activity which is under the control of the actor if the actor knows or should know that such a person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others." The Supreme Court found Comment (b) to that Section of the Restatement to be particularly significant. That Comment stated: "The rule stated in this Section has its most frequent application where the third person is a member of a class which is notoriously likely to misuse the thing which the actor permits him to use. *Thus, it is negligent to place loaded firearms or poisons within the reach of young children or feeble-minded adults.*" (Emphasis supplied.) [1]

■ While we fully recognize the high degree of care applicable to one possessing a loaded firearm in our Commonwealth, based upon our review of the totality of the evidence presented by the Plaintiff, we nevertheless conclude that the trial Court did not commit error in the instant case in ordering a nonsuit. It is argued by Plaintiff on this

1. Our Court had previously followed the same reasoning in *Mendola v. Sambol*, 166 Pa.Super. 351, 71 A.2d 827 (1950).

appeal that the evidence showed that the decedent was "feeble-minded", or in the alternative, that the Defendant knew or should have known that the decedent was suicidal. However, the record is devoid of any evidence supporting the inference that Stanley Ploszanski was "feeble-minded", and there is also no evidence upon which a conclusion could be reasonably reached that the Defendant should have been aware that the decedent may have been "suicidal". On the contrary, the evidence showed that although the decedent occasionally expressed unrealistic fears of Germans, or that he would be deported, he presented himself to his employer as a conscientious employee who had a good relationship with his fellow employees and his supervisor. He exhibited no unusual conduct shortly before the day of his suicide which would have lead any reasonable person to suspect that he might commit suicide. While the employer did possess some evidence that the decedent had seen a psychiatrist many months earlier, such evidence simply could not support the conclusion that he was likely to take his own life. Further, while the Plaintiff relies upon the history of the decedent having ingested an overdose of medication several months prior to his death, that medication was prescribed for and related to a heart condition, and did not reasonably raise the inference of a suicidal disposition on the part of the decedent.

■ Although our law demands a high degree of care by one in the possession of loaded firearms, there is no imposition of *strict liability* for injuries which may arise from such mere possession. In the instant case, the evidence was clearly insufficient to create proof that the decedent was in the category of persons entitled to protection under the holding of *Kuhns v. Brugger, supra.* When a duty of care is stated in our law, it is measured not in an air of abstraction, but rather under factual circumstances and conditions presented in each particular case. See *Potere v. City of Philadelphia*, 380 Pa. 581, 112 A.2d 100 (1955). We cannot find, under the facts presented by the Plaintiff in the instant case, that the Defendant's practice of keeping a

loaded gun in an unlocked locker in the superintendent's basement office, an area of access to adult employees of the Bank, constituted a dereliction of due care, even under the high standards applicable in these circumstances.

The lower court's grant of a compulsory nonsuit is hereby affirmed.