553 A.2d 439

Charlotte M. McPEAKE, as Administratrix of the Estate of Robert T. McPeake, Deceased and Charlotte M. McPeake, on Behalf of Erina Jamie McPeake, a Minor by Charlotte and Robert T. McPeake and Charlotte M. McPeake in Her Own Right, Appellant

v.

WILLIAM T. CANNON, ESQUIRE, P.C.

Superior Court of Pennsylvania.

Argued Sept. 1, 1988.

Filed Jan. 26, 1989.

228

Alberto Roldan, Harrisburg, for appellant.

Jeffrey B. Albert, Philadelphia, for appellee.

Before BROSKY, KELLY and HOFFMAN, JJ.

HOFFMAN, Judge:

This appeal arises from the order of August 26, 1987, granting appellee's preliminary objections and dismissing

appellants' complaint with prejudice. Appellants contend that the trial court erred in granting appellee's preliminary objections because the complaint set forth a valid claim of legal malpractice. For the reasons that follow, we affirm the order below.

On January 11, 1985, appellants' decedent was arrested for burglary, rape, indecent assault, corrupting the morals of a minor, and possession of an instrument of crime. Decedent retained the legal services of appellee to represent him on the above-mentioned charges. On August 18, 1986, after a jury found decedent guilty on all counts, he suddenly jumped from a closed fifth floor window of the courtroom and killed himself. Appellants filed a legal malpractice, wrongful death and survivors' action against appellee, alleging that appellee's negligent representation of decedent caused his fatal leap from the courtroom window after the jury found him guilty of rape. Appellants averred in their complaint eighteen instances of alleged negligent conduct on the part of appellee which led to decedent's conviction. Appellee filed preliminary objections in the nature of a demurrer.[1] The court granted appellee's preliminary objections and the complaint was dismissed with prejudice. This timely appeal followed.

A preliminary objection in the nature of a demurrer is not to be sustained and the complaint dismissed unless

---

1. Appellee's preliminary objections in the nature of a demurrer are as follows:

(1) Plaintiffs have filed this wrongful death and survivor's action against defendant alleging that defendant was negligent in representing decedent in a criminal proceeding.

(2) The harm which plaintiff's allegedly suffered arose from decedent's suicide immediately following entry of a verdict against decedent in that criminal proceeding.

(3) An attorney cannot be held liable for alleged negligence in representing a client in a criminal proceeding unless the client (a) has pursued post-trial relief asserting ineffective assistance of counsel, (b) was prevented from pursuing such relief by conduct of counsel who was allegedly negligent, or (c) was impeded from seeking such relief by other causes beyond the client's control. Inasmuch as the client's suicide prevented pursuit of post-trial relief asserting ineffective assistance of counsel, no cause of action arises in favor of the client-decedent's estate or his survivors.

the law says with certainty that no recovery is possible. *Hoffman v. Misericordia Hosp. of Phila.*, 439 Pa. 501, 267 A.2d 867 (1970). Therefore, if any theory of law will support the claim raised by the [complaint], a dismissal is improper....

For the purpose of our review of a dismissal on the pleadings in the nature of a demurrer, the averments [in the complaint], except to the extent that they constitute conclusions of law, must be taken as true, *Freezer Storage, Inc. v. Armstrong Cork Co.*, 476 Pa. 270, 382 A.2d 715 (1978)....

*Cianfrani v. Commonwealth, State Employees' Retirement Bd.*, 505 Pa. 294, 297, 479 A.2d 468, 469 (1984). *See also Muhammad v. Strassburger, McKenna, Messer, Shilobod and Gutnick*, 374 Pa.Super. 613, 615, 543 A.2d 1138, 1139 (1988); *Aetna Electroplating Co. v. Jenkins*, 335 Pa.Super. 283, 285, 484 A.2d 134, 135 (1984).

## I. Background: Causes of Action based on Suicide generally

■ The gravamen of appellants' complaint is that appellee's negligent representation during trial amounted to legal malpractice, and caused decedent to commit suicide. Generally, suicide has not been recognized as a legitimate basis for recovery in wrongful death cases. This is so because

(4) An attorney cannot be held liable for alleged negligence in representing a client in a criminal proceeding unless and until a conviction occurs. Inasmuch as the suicide occurred prior to entry of judgment of conviction, no cause of action arises in favor of the client-decedent's estate or his survivors.

(5) An attorney cannot be held liable for alleged negligence in representing a client in a criminal proceeding unless that attorney engaged in conduct so grossly violative of the standard of conduct for such representation as to shock the conscience. In the absence of any averment of such conduct, no cause of action arises in favor of the client-decedent's estate or his survivors.

(6) An attorney cannot be held liable for alleged negligence in representing a client in a criminal proceeding unless the client is innocent of the crimes for which the client is being tried. In the absence of any such averment, no cause of action arises in favor of the client-decedent's state or his survivors.

Defendant's Preliminary Objections at 2–3.

suicide constitutes an independent intervening act so extraordinary as not to have been reasonably foreseeable by the original tortfeasor. *See Bleman v. Gold,* 431 Pa. 348, 246 A.2d 376 (1968); *Mike v. Borough of Aliquippa,* 279 Pa.Super. 382, 421 A.2d 251 (1980). *See also* Annot., 41 A.L.R.4th 351, 352 (1985); 11 A.L.R.2d 751, 757 (1950); W. Prosser, *Law of Torts* § 44, at 280–81 (4th ed. 1971). There are, however, limited exceptions to this rule. For example, Pennsylvania has recognized suicide as a legitimate basis for wrongful death claims involving hospitals, mental health institutions and mental health professionals, where there is a custodial relationship and the defendant has a recognized duty of care towards the decedent. *See Simmons v. Saint Clair Memorial Hospital,* 332 Pa.Super. 444, 481 A.2d 870 (1984); *Smith v. United States,* 437 F.Supp. 1004 (E.D.Pa. 1977). In other cases, where the defendant was not associated with a hospital or mental health institution, courts have required both a clear showing of a duty to prevent the decedent's suicide and a direct causal connection between the alleged negligence and the suicide. *See Malloy v. Girard Bank,* 292 Pa.Super. 34, 436 A.2d 991 (1981); *Freedman v. City of Allentown,* 651 F.Supp. 1046 (E.D.Pa.1987). A third line of cases which have recognized suicide as a basis for recovery involve suits brought under the worker's compensation statute. *See Globe Security Sys. Co. v. Workmen's Comp. App. Bd,* 103 Pa.Commw. 384, 520 A.2d 545 (1987); *SCM Corp. v. Workmen's Comp. App. Bd. (Schulman),* 102 Pa.Commw. 536, 518 A.2d 887 (1986). Under this statute, compensation will be granted if a suicide was caused by pain, depression or despair resulting from a work-related injury so severe as to override rational judgment. *See Globe Security Sys. Co. v. Workmen's Comp. Bd., supra; SCM Corp. v. Workmen's Comp. Bd. (Schulman), supra; But see McCoy v. Workmen's Comp. App. Bd.,* 102 Pa.Commw. 436, 518 A.2d 883 (1986).

## II. Legal Malpractice

On review, the issue presented for us is whether an attorney may be held liable for his client's suicide that has

allegedly resulted from the attorney's negligent representation. More specifically, the question is whether an attorney's duty of representation extends to protecting a client from his own suicidal tendencies. The issue is one of first impression in Pennsylvania.

## A.

Appellants proceed under a theory of legal malpractice. As a general matter, the plaintiff in a legal malpractice action must be prepared to show:

1. the employment of the attorney or other basis for duty;

2. the failure of the attorney to exercise ordinary skill and knowledge;

3. that such negligence was the proximate cause of the plaintiff's injuries.

*Schenkel v. Monheit,* 266 Pa.Super. 396, 398, 405 A.2d 493, 494 (1979) (quoting R. Mallen & V. Levit, Legal Malpractice 123 (1977)) (footnote omitted). These elements must be proven by a preponderance of the evidence. *Schenkel v. Monheit, supra.* An attorney will be found to have been negligent if he or she has failed to use that ordinary skill, knowledge, and care which would normally be possessed and exercised under the circumstances by members of the legal profession. *See* Restatement of Torts, § 299A(2) (1988 edition); *Duke v. Anderson,* 275 Pa.Super. 65, 418 A.2d 613 (1980). Once the plaintiff has established that a duty of care is breached, the plaintiff must still establish a causal connection between the defendant's negligent conduct and the plaintiff's injuries. *Hamil v. Bashline,* 481 Pa. 256, 265, 392 A.2d 1280, 1285 (1978). "Proximate" or "legal" causation in turn is defined as "[t]hat which, in a natural and continuous sequence, unbroken by any sufficient intervening cause, produces injury, and without which the result would not have occurred." *Wisniewski v. Great Atlantic and Pacific Tea Company,* 226 Pa.Super. 574, 582, 323 A.2d 744, 748 (1974). Moreover, Prosser has noted that the question of "proximate" causation,

... becomes essentially a question of whether the policy of the law will extend the responsibility for the conduct to the consequences which have in fact occurred. Quite often this has been stated, and properly so, as an issue of whether the defendant is under any duty to the plaintiff, or whether his duty includes protection against such consequences.

W. Prosser, *supra* § 42, at 244. Thus, a defendant will not be found to have had a duty to prevent a harm that was not a reasonably foreseeable result of the prior negligent conduct. The rationale behind this rule is that it would be unfair to impose a duty upon persons to prevent a harm that they could not foresee or avoid.

### B.

■ Here, appellants assert that as a result of appellee's negligent representation decedent committed suicide. More specifically, appellants claim that decedent committed suicide while possessed by an uncontrollable insane frenzy brought on by the jury's verdict of guilty. Appellants further allege that appellee knew of decedent's emotional problems because they were manifested by the uncontrollable twitching of his limbs and his prior expressed intention to take his own life. Appellants therefore argue that decedent's suicide was foreseeable, and that appellee's negligent legal representation was the direct cause. The trial court, in sustaining appellee's preliminary objections, stated that:

The court concludes as a matter of law, assuming the malpractice or negligence of [appellee] is true as alleged, that jumping out of a window is not foreseeable and therefore the alleged actions or omissions of [appellee] are not the proximate or legal cause of [decedent's] injuries. The court will not elaborate further as this issue is a matter of common sense.

Trial Court Opinion at 1.

Our research has revealed only one reported case which deals directly with suicide as the alleged result of legal

malpractice. In *McLaughlin v. Sullivan,* 123 N.H. 335, 461 A.2d 123 (1983), the New Hampshire Supreme Court rejected a wrongful death claim brought against an attorney based upon his client's suicide following the client's conviction in a criminal case. The issue presented in *McLaughlin,* as here, was whether, as a matter of law, legal malpractice could be a legal or proximate cause of suicide. *Id.* at 341, 461 A.2d at 127. The Court held that a lawyer's duty of representation does not extend to protecting a client from his suicidal tendencies, and thus, proximate causation could not be established as a matter of law. *Id.* We agree with the *McLaughlin* court and adopt its holding as a matter of Pennsylvania law.

The duty of an attorney in a criminal case is to provide competent legal representation to his client. If an attorney does not provide adequate representation, he has breached his duty and is liable to his client for the resulting injuries. An attorney, however, is responsible only for the loss proximately caused his client by his negligence. Suicide has been recognized as an act that is so extraordinary as not to be reasonably foreseeable and thus courts have held that it is not the type of harm that can proximately result from ordinary negligence.[2] The exceptions to this rule usually involve defendants with some special knowledge or duty, such as institutions, hospitals, and mental health professionals. An attorney, unlike a hospital or mental health professionals, has no special expertise or professional training, that would enable him either to foresee that a client is likely to commit suicide, or, if he could make that determination, to adopt a response to the threat. The *McLaughlin* Court's reasoning in this regard is instructive:

> we do not believe that lawyers generally have either the expertise or training necessary to judge or foresee that a client will commit suicide, or to fashion appropriate responses to a risk. It follows that such a risk should not

2. We note that the allegations in appellants' complaint are limited to ordinary negligence. Because appellants proceeded solely under this theory, we need not address the question whether liability may be premised upon a suicide caused by alleged *intentional* misconduct.

be found to be a hazard against which a lawyer can fairly be said to have the duty to guard. We find the connection between negligence in the practice of law, and the harm which befell the decedent in the case to be simply too attenuated to impose legal liability on the part of the defendant.

*Id.* at 342, 461 A.2d at 127–28. Because an attorney does not possess the ability either to perceive that a client is likely to commit suicide, or to prevent the suicide, we will not impose liability upon him for failing to prevent a harm that is not a foreseeable result of prior negligent conduct.[3]

Moreover, we agree with the *McLaughlin* Court that, as a matter of policy, it would be inappropriate to impose liability upon an attorney for a suicide that allegedly resulted from his negligence. To impose liability based on a client's suicide,

would undoubtedly open the floodgates of unexpected and inequitable liability on the part of attorneys. Neither are we unmindful of the fact that attorneys, if exposed to such liability, would naturally be discouraged from representing what may be a sizeable number of depressed or unstable criminal defendants, in the fear that it would later be alleged that one such client committed suicide out of despondence over a "wrongful" conviction based on inadequate representation.

*Id.* at 342–47, 461 A.2d at 127–28.

In light of the foregoing, we find, as a matter of law, that the alleged negligence of appellee could not be the proximate cause of decedent's injuries, and thus we hold that an attorney's duty to provide adequate representation does not

**3.** We note that other jurisdictions have recognized that liability should not be imposed upon an attorney for failing to prevent an unforeseeable harm. *See Gautam v. De Luca,* 215 N.J.Super. 388, 521 A.2d 1343 (1987) (claim for negligent infliction of emotional distress rejected in malpractice setting since it is not ordinarily situation in which it is foreseeable that failure to provide effective representation may cause serious mental distress); *See also Kunau v. Pillers, Pillers & Pillers, P.C.,* 404 N.W.2d 573 (Iowa App.1987) (same); *Edwards v. Chain, Younger, Jameson, Etc.,* 191 Cal.App.3d 515, 236 Cal.Rptr. 465 (5 Dist.1987) (same).

236

encompass the duty to foresee and protect a client from his own possible suicidal tendencies. Thus, even assuming that appellee negligently represented the decedent, he cannot be held liable for decedent's subsequent suicide. We therefore conclude that the trial court properly granted appellee's preliminary objections and that appellants' negligence action seeking damages for decedent's suicide was properly dismissed. Accordingly, we affirm the order below.

Order affirmed.