# Loff v. Granville

564

C.P. of Lackawanna County, no. 00-CV-6166.

*Lawrence J. Moran* and *James J. O'Connor,* for plaintiff.

*Michael J. Domanish,* for defendant Granville.

*James L. Beausoleil Jr.* for defendant Kasa.

NEALON, *J.,* April 25, 2001—Defendant, Cary Kasa, has filed preliminary objections in the nature of a demurrer to the averments by plaintiff, Brad Loff, regarding Kasa's alleged duty of "extraordinary care," responsibility to train and supervise defendant, Marie Helen Granville, concerning safe operation of a loaded shotgun, and legal obligation as a landowner. In the alternative, Kasa requests that Loff be required to file a more specific pleading pursuant to Pa.R.C.P. 1019(a). For the reasons set forth below, the demurrer will be granted as to the assertion of a heightened duty of extraordinary care, but denied in all other respects.

## I. FACTUAL BACKGROUND

According to the allegations of the complaint, on November 9, 1999, Kasa provided Granville with a

loaded Mossberg 500E, 410 gauge pump shotgun when she was present in Kasa's trailer which was located in a wooded area in Archbald. Prior to that time, Granville had never received any training or instruction regarding the use of a weapon, nor had she ever operated a shotgun in her lifetime. Despite the fact that Kasa was aware of Granville's unfamiliarity with the operation of firearms, he provided no instruction or guidance to Granville at the time he furnished the loaded shotgun to her. (See plaintiff's complaint, ¶¶4-8.)

After he supplied Granville with the loaded shotgun, Kasa exited the trailer and traveled to another site approximately 1 1/2 miles away. At that time, Loff and several of his friends were riding their all-terrain vehicles (ATVs) in the wooded areas of Archbald mountain. Upon discovering Loff and the other ATV riders in the vicinity of Kasa's trailer, Granville confronted them with the loaded shotgun and ordered them to deactivate and dismount their ATVs. Notwithstanding the fact that Loff and his companions were unarmed, Granville pointed the loaded shotgun in Loff's direction and recklessly discharged the weapon as he was alighting his ATV, thereby shooting him and causing serious personal injuries. (*Id.*, ¶¶5, 9-16.)

In addition to his claims against Granville, Loff has advanced a negligence theory against Kasa in Count II of the complaint. Specifically, Loff avers that Kasa owed: (1) "a duty to use due care under the circumstances;" (2) "a duty not to place plaintiff Brad Loff at risk of harm;" (3) "a duty to use extraordinary care so that no harm would be visited upon others;" (4) "a duty to refrain from acting with reckless indifference. . . , wanton negligence or misconduct toward Brad Loff;" (5) "a duty to employ and utilize proper persons and instrumentalities;" (6) "a duty to appropriately super-

vise Marie Helen Granville in connection with [her] use of the loaded shotgun;" (7) "a duty to prevent the negligent, wanton and tortious conduct of Marie Helen Granville;" (8) "a duty to have trained, instructed and assured the competency of Marie Helen Granville in the use, operation and safety of the loaded shotgun;" and (9) "a duty to exercise reasonable care so to control Marie Helen Granville." (*Id.,* ¶¶39-47.) Throughout the complaint, Loff commingles Kasa's purported duty "to use due care" with his alleged duty "to use extraordinary care." (*Id.,* ¶¶48(a), (c).)

In his preliminary objections, Kasa demurs to Loff's assertion of a duty to use "extraordinary care" on the grounds that such a heightened duty of care is not recognized in Pennsylvania. Kasa further objects to the viability of a legal duty to train and supervise Granville with regard to firearm usage and to the adequacy of Loff's allegations concerning Kasa's obligations as a landowner. Additionally, Kasa seeks greater specificity with respect to Loff's contention that Kasa "provided" a loaded shotgun to Granville. Following the filing of legal briefs and the completion of oral argument on April 23, 2001, this matter was submitted for a decision.

## II. DISCUSSION

### (A) *Standard of Review*

A preliminary objection in the nature of a demurrer tests the legal sufficiency of the complaint. *Constantino v. University of Pittsburgh,* 766 A.2d 1265, 1268 (Pa. Super. 2001); *Nazar v. Clark Distribution Systems,* 46 D.&C.4th 28, 31 (Lacka. Co. 2000). The question presented by a demurrer is whether, on the facts averred, the law says with certainty that no recovery is

possible. *DeMary v. Latrobe Printing & Publishing Co.,* 762 A.2d 758, 761 (Pa. Super. 2000); *Oven v. Pascucci,* 46 D.&C.4th 506, 511 (Lacka. Cty. 2000). When considering the merits of preliminary objections, all material facts set forth in the complaint, as well as all inferences reasonably deducible therefrom, are regarded as true. *Hess v. Gebhard & Co. Inc.,* 769 A.2d 1186, 1194 (Pa. Super. 2001). However, conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion need not be accepted as true. *Milton S. Hershey Medical Center v. Commonwealth of Pennsylvania, CAT Fund,* 763 A.2d 945, 948 n.5 (Pa. Super. 2000).

Preliminary objections may only be granted in cases where it is clear and free from doubt that the facts alleged are legally insufficient to establish a right to relief. *Stair v. Turtzo, Spry, Sbrocchi, Faul & LaBarre,* 768 A.2d 299, 301 (Pa. 2001). In that regard, the mere novelty of a claim does not require the grant of a demurrer. *Denton v. Silver Stream Nursing & Rehabilitation Center,* 739 A.2d 571, 575 (Pa. Super. 1999); *Syslo v. Davis,* 102 Lacka. Jur. 210, 212 (2000). If there is any doubt as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections. *Constantino, supra; Fasula v. Hijazi,* 44 D.&C.4th 553, 558 (Lacka. Cty. 1999).

### (B) *Duty of Extraordinary Care*

Relying upon *Kuhns v. Brugger,* 390 Pa. 331, 135 A.2d 395 (1957), Loff argues that Pennsylvania law imposes a "duty of extraordinary care" on persons who handle or possess weapons. In *Kuhns,* the court remarked that "[a]ny loaded firearm, including a pistol, is a highly dangerous instrumentality and, since its pos-

session or use is attended by extraordinary danger, any person having it in his possession or using it is bound to exercise extraordinary care." *Id.* at 338, 135 A.2d at 401. This apparent pronouncement of a heightened standard of care for users of firearms remained the law in Pennsylvania for several decades. See *Matulevich v. Matulevich,* 345 Pa. Super. 507, 511, 498 A.2d 939, 941 (1985); *Everette v. City of New Kensington,* 262 Pa. Super. 28, 32, 396 A.2d 467, 469 (1978).

However, in *Stewart v. Motts,* 539 Pa. 596, 654 A.2d 535 (1995), the Supreme Court of Pennsylvania revisited the issue of an enhanced duty of care with respect to dangerous agencies. The *Stewart* court began its analysis "by reaffirming the principle that there is but one standard of care to be applied to negligence actions involving dangerous instrumentalities in this Commonwealth" and observed:

"The care required is always reasonable care. The standard never varies, but the care which it is reasonable to require of the actor varies with the danger involved in his act and is proportionate to it. The greater the danger, the greater the care which must be exercised. . . ." *Id.* at 601, 654 A.2d at 537 (quoting Restatement (Second) of Torts §298 comment b (1965)). After reviewing its prior rulings governing highly dangerous activities, the court stated:

"We do not believe that these cases created a heightened or extraordinary standard of care above and beyond the standard of reasonable care for handling dangerous agencies. When we referred to a 'higher degree of care' in these cases, we were not creating a second tier of 'extraordinary care' over and above ordinary or reasonable care. Instead, we were simply recognizing the general principle that under the reasonable care standard, the level of care must be proportionate to the dan-

ger involved. Our use of the language 'higher degree of care' merely stated the common sense conclusion that the use of a dangerous agency would require the reasonably prudent person to exercise more care. In fact these cases rejected any formalistic higher standard of care in holding that 'no absolute standard of care [could] be fixed by law.'

"Admittedly, this notion of a heightened level of 'extraordinary care' for the handling of dangerous agencies has crept into our jurisprudence, In *Kuhns v. Brugger,* 390 Pa. 331, 135 A.2d 395 (1957), this court considered the proper standard of care for negligence involving a handgun. . . . we found that the possession of a loaded handgun placed upon the defendant the duty of, exercising not simply ordinary, but extraordinary care so that no harm might be visited upon others.' *Kuhns,* 390 Pa. at 344, 135 A.2d at 403. This language in *Kuhns* on its face unfortunately suggests that this Commonwealth recognizes a separate standard of care, 'extraordinary care,' for dangerous instrumentalities above and beyond 'ordinary care.' We reject this suggestion." *Stewart, supra* at 603, 654 A.2d at 538-39.

Consequently, contrary to Loff's contention, Pennsylvania law does not currently recognize a distinct duty of "extraordinary care" in addition to the well established "reasonable care" standard which is measured by the degree of danger involved. See *Stecyk v. Bell Helicopter Textron Inc.,* 1998 WL 42303, *5 (E.D. Pa. 1998) ("[i]n negligence actions involving dangerous instrumentalities, a party's conduct is evaluated according to 'the standard of reasonable care under the circumstances,' *i.e.,* 'care in proportion to the danger involved in the act.' "). At the time of trial, Loff may argue that the level of reasonable care required of Kasa was commensurate with the degree of danger involved, to wit, that the use

of a dangerous instrumentality obligates a reasonably prudent person to exercise greater care.[1] However, in the interim, Loff's assertion of an independent duty of extraordinary care will be stricken in light of *Stewart*.

## (C) *Duty To Train and Supervise*

Kasa also demurs to Loff's contention that Kasa had a duty to instruct Granville concerning the proper operation of firearms or to otherwise supervise her actions relative to the loaded shotgun. Pennsylvania has adopted the Restatement (Second) of Torts §308 (1965) which states that "it is negligent to permit a third person to use a thing . . . which is under the control of the actor if the actor knows or should know that such person intends or is likely to use the thing . . . in such a manner as to create an unreasonable risk of harm." Comment (b) to section 308 further provides that "[t]he rule applies . . . if the actor knows that the third person intends to misuse it, or if the third person's known character or the peculiar circumstances of the case are such as to give the actor good reason to believe that the third person may misuse it." See *Malloy v. Girard Bank,* 292 Pa. Super. 34, 39, 436 A.2d 991, 993 (1981).

---

1. As discussed in section II(D) *infra,* Loff may have been a trespasser on Kasa's property at the time of the shooting. In *Zimmerman v. SEPTA,* 168 F.3d 680 (3d Cir. 1999), the U.S. Court of Appeals for the Third Circuit examined the heightened standard of care applicable to electricity suppliers vis-à-vis trespassers and concluded:

"Generally, the supplier of electricity or the possessor land site owes a heightened, rather than an ordinary, degree of care to an entrant on land with high-voltage electrical transmission lines. . . . However, this heightened duty of care extends only to those *lawfully* in proximity to the wires. The standard of care owed to trespassers by suppliers of electricity is a duty to avoid willful and wanton injury." *Id.* at 687. (emphasis in original) (citations omitted)

In *Frey by Frey v. Smith,* 454 Pa. Super. 242, 685 A.2d 169 (1996), *alloc. denied,* 549 Pa. 701, 700 A.2d 441 (1997), the parents of a minor who gave his airgun to another juvenile were sued after a third child was struck by a pellet fired from the airgun. The gravamen of the complaint was that the defendants were negligent for failing to provide instructions to a person who they knew or should have known was unfit to handle a dangerous instrumentality in a safe manner. The trial court granted the defendant's preliminary objections and dismissed the tort claims against the gun owner and his parents. On appeal, the Superior Court reversed and reasoned "that an owner of a weapon owes a duty to all people who might suffer harm or injury from the weapon's discharge and this includes harm inflicted by a third person if the owner 'knew or had reason to know that such person was likely to use the weapon in such a manner as to create an unreasonable risk of harm.' " *Id.* at 249, 685 A.2d at 172. Noting that the risk of injury could be regarded as "reasonably foreseeable," the *Frey* court concluded that "the finder of fact could infer that . . . the owner of the gun knew or should have known that [the co-defendant] was likely to use the weapon in such a manner as to create an unreasonable risk of harm." *Id.* at 250, 685 A.2d at 172.

Instantly, Loff has averred that Granville was incompetent to operate a loaded shotgun and that Kasa "did not provide Ms. Granville with either training or instruction in the use of this shotgun" even though he was aware of her unfitness to use it. (See plaintiff's complaint, ¶¶6, 8.) Accepting those averments as true and affording Loff the benefit of all inferences reasonably deducible from those allegations, it is conceivable that Kasa "had reason to know that [Granville] was likely to use the weapon in such a manner as to create an unreason-

able risk of harm." *Frey, supra.* Therefore, Kasa's demurrer will be denied at this early stage of the litigation without prejudice to his right to later seek dismissal of Loff's failure to train/supervise claim based upon information revealed during discovery. See *e.g., J. H. ex rel. Hoffman v. Pellak,* 764 A.2d 64, 66-67 (Pa. Super. 2000) (summary judgment entered in favor of non-custodial parent who did not know about the air pistol in her son's possession and was unaware of the need to supervise his use of the pistol). Cf. *City of Philadelphia v. Beretta USA, Corp.,* 126 F. Supp.2d 882, 901-903 (E.D. Pa. 2000).

### (D) *Kasa's Duty As a Landowner*

Kasa generally demurs to Loff's complaint on the grounds that he has failed to allege facts which support a cognizable theory of landowner liability against Kasa. It is beyond dispute that the duty to protect against known dangerous conditions falls upon the possessor of the land, *Zimmerman,* 168 F.3d at 684, and the degree of care required is dependent upon the entrant's status as a trespasser, licensee or invitee. *Updyke v. BP Oil Co.,* 717 A.2d 546, 549 (Pa. Super. 1998); *Palange v. Philadelphia Law Dept.,* 433 Pa. Super. 373, 375-77, 640 A.2d 1305, 1307 (1994), *alloc. denied,* 542 Pa. 649, 666 A.2d 1057 (1995). A trespasser is defined as "a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise." *Rossino v. Kovacs,* 553 Pa. 168, 718 A.2d 755, 756-57 (1998); *Zimmerman,* 168 F.3d at 685. A licensee is a person who is privileged to enter or remain upon the land by virtue of the possessor's consent. *Updyke, supra; Zimmerman, supra.* However, permission to use the pre-

mises may be implied from conduct on the part of the landowner which justifies others in believing that they are allowed to use the property, *Wiegand by Wiegand v. Mars National Bank,* 308 Pa. Super. 218, 223, 454 A.2d 99, 102 (1982), even though there was no specific permission to use the land on the occasion in question. *Pallange, supra* at 379-80, 640 A.2d at 1308-1309. By way of illustration, "when a landowner tacitly permits the boys of the town to play ball on his vacant lot, they are licensees only." *Updyke,* 717 A.2d at 550 (quoting Restatement (Second) of Torts §332 comment d).

"In Pennsylvania, a trespasser may recover for injuries sustained on land only if the possessor of land was guilty of wanton or willful negligence or misconduct." *Rossino,* 718 A.2d at 756; *Chicchi v. SEPTA,* 727 A.2d 604, 609 (Pa. Commw. 1999), *alloc. denied,* 560 Pa. 736, 747 A.2d 371 (1999) (possessor has "duties to refrain from a reckless and wanton conduct toward a trespasser and to exercise ordinary and reasonable care, if the trespasser is known to [the possessor]"). Conversely, a possessor of land is liable to a licensee for ordinary negligence if the possessor knows or has reason to know of the dangerous condition and fails to exercise reasonable care to make the condition safe or to warn licensees of the risks presented. *Rossino,* 718 A.2d at 757. Furthermore, the Recreational Use of Land and Water Act (RULWA) generally immunizes a landowner who makes property available to the public for recreational purposes free of charge, except for instances of "willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity." See 68 P. S. §§477-3, 477-4, 477-6.

In his preliminary objections, Kasa refers to Loff as "an admitted trespasser" who was not owed any duty by

Kasa. (See defendant's preliminary objections, ¶¶30-32.) However, the complaint suggests that Loff was a licensee and avers that "the area was not posted with 'no trespassing' signs or any other type of warning or barrier indicating that [Loff] was not permitted to enter or remain in the area." To the contrary, Loff asserts that "there was a road leading into the area where the trailer and Marie Helen Granville were located on November 9, 1999, indicating to [Loff] that the area was open for others to enter upon this area." (See plaintiff's complaint, ¶¶11-12.) More importantly, even if Loff and his companions were deemed to be trespassers, Loff repeatedly charges Kasa with "recklessness and wanton misconduct" in addition to ordinary negligence. (*Id.,* ¶¶48-55.) As a consequence, regardless of Loff's status as a trespasser or licensee, the allegations of the complaint are sufficient to state a viable cause of action against Kasa.

Alternatively, Kasa posits that he is immune from liability under the RULWA. That Act grants immunity to a landowner whose land is used for recreational purposes by the public without charge regardless of whether [s]he has invited or permitted the public to enter the land. *Friedman v. Grand Central Sanitation Inc.,* 524 Pa. 270, 277-78, 571 A.2d 373, 376-77 (1990) (following *Barrett v. Pennsylvania Gas & Water Co.,* 631 F. Supp. 731, 734 (M.D. Pa. 1985) (Nealon, C.J.)). Assuming arguendo that the RULWA is applicable, Kasa may nevertheless be held liable under 68 P.S. §477-6(1) for willful failure to guard or warn against a dangerous condition or activity. As stated above, Loff has, in fact, averred that Kasa is chargeable with wanton or willful misconduct. Compare *Zlakowski v. PennDOT,* 154 Pa. Commw. 528, 533-34, 624 A.2d 259, 261-62 (1993)

(plaintiff's amended complaint failed to allege a willful or malicious failure to warn under section 477-6(1)); *Barrett,* 631 F. Supp. at 734 ("plaintiff conceded that there was no evidence of any willful activity."). Hence, Loff has sufficiently alleged a landowner liability claim upon which relief may be granted. See *Baran v. Pagnotti Enterprises Inc.,* 402 Pa. Super. 298, 303, 586 A.2d 978, 980 (1991) (the RULWA's " 'willful and malicious' standard represents a codification of the standard of care owing to a gratuitous licensee at common law.").

(E) *Motion for More Specific Pleading*

Last, Kasa argues that Loff should be directed to file a more specific complaint since he "alleges that Mr. Kasa 'provided' a loaded shotgun to Ms. Granville" but "[n]o definition or explanation of the word 'provided' is given." (See defendants' preliminary objections, ¶26.) Under the Pennsylvania Rules of Civil Procedure, the material facts upon which a cause of action is based must "be stated in a concise and summary form" with "[a]verments of time, place and items of special damage [being] specifically stated." Pa.R.C.P. 1019(a), (f). Pursuant to that fact pleading mandate, a complaint must not only apprise the defendant of the claims being asserted, but must also synopsize the essential facts which support those claims. *Miketic v. Baron,* 450 Pa. Super. 91, 104, 675 A.2d 324, 330-31 (1996); *Alpha Tau Omega Fraternity v. University of Pennsylvania,* 318 Pa. Super. 293, 298, 464 A.2d 1349, 1352 (1983). In order to withstand a challenge for lack of specificity, the pleading must contain averments of all the facts that the plaintiff will eventually have to prove in order to recover and must be sufficiently specific so as to en-

able the defendant to prepare a defense and responsive pleading. *Baker v. Rangos,* 229 Pa. Super. 333, 350, 324 A.2d 498, 505-506 (1974); *Doe v. Curran,* 45 D.&C.4th 544, 556 (2000).

It is axiomatic that words are to be interpreted according to their common and approved usage, see *e.g.,* Pa.R.C.P. 103(a), and the term "provided" is generally construed as denoting the giving, furnishing, supplying or equipping of an item to another. As used in the complaint, the word "provided" is sufficiently specific such that Kasa is capable of preparing a defense and answer. Accordingly, the request to have Loff file a more specific pleading will be denied.

## ORDER

And now, April 25, 2001, upon consideration of the "preliminary objections of Cary Kasa," the memoranda of law submitted by the parties and the oral argument of counsel on April 23, 2001, and based upon the reasoning set forth in the foregoing memorandum, it is hereby ordered and decreed that:

(1) The preliminary objections of defendant, Cary Kasa, are granted in part and denied part;

(2) The preliminary objection in the nature of a demurrer to the assertion of a duty of "extraordinary care" is granted and the allegations regarding a duty of "extraordinary care" are stricken from the complaint;

(3) In all other respects, the preliminary objections in the nature of a demurrer and a motion for a more specific pleading are denied; and

(4) Within 20 days of the date of this order, defendant, Cary Kasa, shall file a responsive pleading to the complaint.