J-A16021-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MARYJANE HENRY, EXECUTRIX OF THE ESTATE OF SCOTT E. HENRY | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : | |
| NICHOLAS F. COLANGELO, PH.D., CLEARBROOK FOUNDATION, INC., ALBERT D. JANERICH, M.D., ALBERT D. JANERICH & ASSOCIATES, MATTHEW A. BERGER, M.D., MATTHEW A. BERGER, M.D., P.C. | : : : : : : : : | No. 1579 MDA 2020 |
| APPEAL OF: NICHOLAS F. COLANGELO, PH.D. AND CLEARBROOK FOUNDATION, INC. | : : : | |

Appeal from the Order Entered October 7, 2020
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
2019-CV-14101

BEFORE:   KUNSELMAN, J., McCAFFERY, J., and STEVENS, P.J.E.*

MEMORANDUM BY McCAFFERY, J.:              **FILED:  AUGUST 24, 2021**

In this interlocutory appeal by permission, Nicholas F. Colangelo, Ph.D. (Colangelo) and Clearbrook Foundation, Inc. (Clearbrook) appeal the order entered October 7, 2020 in the Court of Common Pleas of Luzerne County overruling their preliminary objections to dismiss the complaint against them.

The trial court provides the following summary:

_____

* Former Justice specially assigned to the Superior Court.

Plaintiff [Maryjane Henry, Executrix of the Estate of Scott E. Henry (the Henry Estate)] is the surviving spouse of Scott E. Henry . . . and filed the instant action as executrix of the estate of Decedent. Defendant Colangelo is an adult individual who held himself out as a licensed mental health professional and/or qualified mental health counselor to the community, Decedent, and the family of Decedent. Defendant Colangelo represented in words or substance, to Decedent and Decedent's family that he was experienced and sufficiently qualified to manage the mental health crisis being experienced by Decedent and that he could do so safely and with all requisite experience. At all times material to the instant matter, Defendant Colangelo was an employee of Defendant Clearbrook, a professional corporation or other similarly-configured business entity. Defendant Janerich, at all times material hereto, was a physician licensed to practice medicine in Pennsylvania, specializing in psychiatry, and was an employee of Defendant Berger Corporation.

Decedent was sixty years old and had a medical history that was significant for drug and alcohol addiction, depression, anxiety, mood disorder, and impulse control problems. Decedent had been sober for over eighteen years and attended various treatment programs and supportive services including Alcoholics Anonymous, at which Decedent became acquainted with Defendant Colangelo. Defendant Colangelo had no education, training, or experience with respect to the counseling and/or treatment of mental health patients. Defendant Colangelo held himself out, nonetheless, as "Dr. Colangelo," and represented in his professional biography and elsewhere that he had significant clinical expertise in mental health counseling and treatment. Defendant Colangelo undertook to provide mental health counseling and treatment to Decedent.

In October of 2018, Decedent experienced a drastic worsening of his mental health which included persistent insomnia, anxiety, depression, thoughts of self-harm, and thoughts of suicide. Between October and December 13, 2018, Decedent repeatedly reported his mental health symptoms, including thoughts of self-harm and suicide, to Defendant Colangelo, and despite a lack of any training, experience, certifications, or licenses as a mental health professional, Defendant Colangelo provided mental health counseling and therapy to Decedent during this time frame. Upon receiving Decedent's complaints, Defendant Colangelo expressly told

Decedent and Decedent's family that Defendant Colangelo would help Decedent and guide him through this difficult time[;] in that regard, Defendant Colangelo arranged medical appointments for Decedent, discussed his treatment and prescriptions with physicians who wrote those prescriptions, and generally acted as a healthcare professional coordinating the care and management of Decedent's mental health treatment. During this time period, Defendant Colangelo learned that Decedent was suicidal, had guns in his home, and had a plan to harm himself, but Defendant Colangelo failed to inform the legal authorities, mental health professionals, or Decedent's family about Decedent's plan for self-harm. Defendant Colangelo communicated assurances to Decedent's son that Defendant Colangelo had a treatment plan in place for Decedent's condition and was coordinating care with other professionals.

On or about October 27, 2018, Defendant Colangelo began communicating about Decedent with Defendant Janerich, at which time Defendant Janerich began providing medical treatment to Decedent, despite his areas of expertise being physiatry and addiction medicine.[1] On October 27, 2018, Decedent received sleeping medication prescribed by Defendant Janerich, and on November 1, 2018, Decedent received additional medications that were prescribed by Defendant Janerich. On November 7, 2018, Decedent was first evaluated by Defendant Janerich "after [Defendant Janerich] communicat[ed] with Nick Colangelo." Defendant Janerich diagnosed Decedent with an "unspecified mood (affective) disorder" and prescribed Naproxen (pain medication), Trazadone (sleeping/anti-anxiety medication), and Melatonin. On November 8th, 20th, and 30th of 2018, Decedent presented to Defendant Janerich, reporting depression, and on the second of these visits also reporting thoughts of self-harm.

On or before December 10, 2018, Defendant Colangelo began communicating about Decedent with Defendant Berger, a licensed psychiatrist. On that date, Decedent was evaluated by Defendant Berger at the request of Defendant Colangelo, at which time Decedent reported to Defendant Berger he had been

---

[1] Physiatry is a branch of medicine concerned with restoring and enhancing functional ability and quality of life for people with physical impairments or disabilities, such as stroke, brain injury, or muscle or nerve damage.

experiencing increased anxiety, increased depression, impaired concentration, ruminations, poor sleep, anergia, inability to function, inability to work, and being overwhelmed. Defendant Berger diagnosed Decedent with generalized anxiety disorder and major depressive disorder and prescribed two new medications. On December 12, 2018, Decedent called the office of Defendant Berger to report that his medications were not working, but the phone call was not returned.

On the morning of December 13, 2018, Decedent was found, presumably deceased, in his home with a self-inflicted gunshot wound to the head.

Trial Ct. Op., 1/27/21, at 3-7.

The Henry Estate filed the present action, sounding in negligence and arising under the Wrongful Death Act and the Survival Act.[2]  This interlocutory appeal arises from the overruling of the defendants' preliminary objections. On October 7, 2020, the trial court denied a requested stay pending appeal, but granted a defense request to amend the orders overruling preliminary objections such that those orders would be immediately appealable under 42 Pa.C.S. § 702(b), which governs interlocutory appeals by permission.  Trial Ct. Op. at 3.  On December 30, 2020, this Court granted permissive appeal.[3]

Colangelo and Clearbrook frame the question presented thusly:

Whether, in a negligence action, no duty arises to prevent the suicide of an acquaintance when a person, who is not a licensed healthcare professional, counsels that acquaintance and refers him to licensed doctors, including a psychiatrist who then treats

---

[2] 42 Pa.C.S. §§ 8301 and 8302.

[3] Codefendants Albert D. Janerich, M.D., Albert D. Janerich & Associates, Matthew A. Berger, M.D., Matthew A. Berger, M.D., P.C. also appeal; **see Henry v. Colangelo, et al.**, 1580 MDA 2020.

the acquaintance on a voluntary, outpatient basis, and neither the doctor nor person exercise any custody or control over the acquaintance?

Colangelo and Clearbrook Brief at 3.

> [O]ur standard of review of an order of the trial court overruling or [sustaining] preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.
>
> Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Haun v. Community Health Systems, Inc.*, 14 A.3d 120, 123 (Pa. Super. 2011) (citations omitted).

We first note that the parties characterize the crucial relationship between decedent and Colangelo differently. From the Henry Estate's perspective, this is a story about a charlatan holding himself out as a mental health professional, thereby courting the worst risk in mental health treatment. Henry Brief at 2. In Colangelo's telling, the decedent was an acquaintance whom he (perhaps) met while both attended meetings of

Alcoholics Anonymous.[4]  Colangelo Brief at 3-4.  At this early stage, the trial court is tasked with accepting all well-pled material allegations in the complaint as true, as well as all reasonable inferences therefrom.  *Bayada Nurses, Inc. v. Com., Dep't of Labor & Indus.*, 8 A.3d 866, 884 (Pa. 2010).

After reciting and applying the appropriate standard, the trial court concluded that it is "unable to rule with certainty that the demurrer should be sustained, as the existence of a duty of care in the instant scenario is: A) not foreclosed by [*McPeake v. William T. Cannan, Esq., P.C.*, 553 A.2d 439 (Pa. Super. 1989)]; and B) favored by the duty analysis set forth [in *Althaus v. Cohen*, 756 A.2d 1166 (Pa. 2000)]."  Trial Ct. Op. at 8-9.  In *McPeake*, this Court held that a decedent's suicide abrogates a prospective tortfeasor's duty of care for purposes of wrongful death and survivorship.  *McPeake* is a legal malpractice action in which this Court affirmed the order sustaining preliminary objections where the attorney defendant had undertaken to defend the decedent in a criminal trial; the decedent reacted to the jury verdict of guilty by jumping from a courthouse window to his death.  *McPeake*, 553 A.2d at 440.  *McPeake* stands for the principle that there can be no duty to prevent suicide where the risk is not reasonably foreseeable, as "it would be unfair to impose a duty upon persons to prevent a harm that they could not foresee or avoid."  *McPeake*, 553 A.2d at 442.

---

[4] Colangelo's Brief describes Colangelo as having spent "years as President, CEO, and/or Director of various addiction and mental health facilities." Colangelo's Brief at 39.

> An attorney . . . is responsible only for the loss proximately caused his client by his negligence. Suicide has been recognized as an act that is so extraordinary as not to be reasonably foreseeable and thus courts have held that it is not the type of harm that can proximately result from ordinary negligence.

*Id.* (footnote omitted). The **McPeake** Court also recognized that, although the general rule is against liability for suicide, there are "limited exceptions" including one for claims "involving hospitals, mental health institutions and mental health professionals, where there is a custodial relationship and the defendant has a recognized duty of care towards the decedent." *Id.* at 441.

In **Althaus**, our Supreme Court determined that a therapist who treats a child for alleged sexual abuse owes no duty of care to the child's parents where the child allegedly has been abused by the parents. **Althaus ex rel. Althaus v. Cohen**, 756 A.2d 1166, 1167 (Pa. 2000). The trial court relied on the duty analysis set forth in **Althaus**:

> The determination of whether a duty exists in a particular case involves the weighing of several discrete factors which include: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution.

**Althaus**, 756 A.2d at 1169 (citations omitted).

The trial court applied these factors to the facts as pled, determining that Colangelo "held himself out to Decedent and Decedent's family as qualified to provide mental health treatment to Decedent, then undertook to provide such care to Decedent." Trial Ct. Op. at 16. The trial court found no

social utility in "misrepresenting one's qualifications in the attempted provision of specialized care to an individual suffering from potentially grave psychological issues." *Id.* The trial court found the risk courted here to be both self-evident and grave. *Id.* at 17. In considering the consequences of imposing a duty here, the trial court considered that such imposition "would operate to ensure 1) that unqualified individuals do not undertake to provide mental health treatment [ ] which they are not qualified to render" and "2) that other qualified medical or mental health professionals should not act at the direction of or in accordance with treatment schemes devised by unqualified individuals." *Id.* at 18. Finally, the trial court concluded that imposition of a duty here would be consistent with the public's interest in "ensuring that 1) mental health treatment is provided by, and only by, those qualified to render such care; and 2) only such qualified professionals may develop actionable treatment plans" to implement such care. *Id.* at 19. "Were an individual to have lost a leg due to having placed their trust in the surgical care of an unqualified person who held themselves out to have been qualified . . . the public interest in ensuring the prevention of such unqualified surgery through the imposition of liability would be unquestioned." *Id.*

Colangelo argues that the trial court misapplied *McPeake*, as in Colangelo's reading, it forecloses recovery. Colangelo's Brief at 17-20. Further, Colangelo characterizes some of the factors relied upon by the trial court as "conclusions of law" as opposed to "well pleaded material allegations" and "reasonable inferences therefrom." *Id.* at 24-27. Specifically, Colangelo

asserts that the allegation "[Appellant] Colangelo, as an employee of [Appellant Clearbrook], undertook to provide mental health treatment and services to Decedent" is a legal conclusion and therefore not subject to the general rule for preliminary objections that averments in the complaint must be taken as true. *See id.* at 25. Finally, Colangelo reweighs the factors outlined in ***Althaus***, reaching very different conclusions as to what those factors say about the present matter. *Id.* at 27-52.[5]

The stringent standard for preliminary objections seeking dismissal requires that they be sustained only where it is free from doubt that the plaintiff cannot establish facts sufficient to establish the right to relief. ***Haun***, 14 A.3d at 123. This matter arguably falls within an explicit exception to the general rule against wrongful death liability for death by suicide. ***McPeake***, 553 A.2d at 441. Whether Colangelo is a mental health professional or took on the duty appropriate to such a professional will be for the jury to determine. Certainly, it would be contrary to public policy to allow Colangelo to escape liability if it is true that he was merely masquerading as such a professional when he, as alleged in the pleadings, reassured the decedent's family that he was capable of shepherding the decedent through the mental health crisis that ultimately claimed his life. *See* Trial Ct. Op. at 5. Status as a layperson will not serve as a shield to liability where the layperson in question undertakes

---

[5] This Court reviewed Henry's Brief, as well as an *amicus* brief filed by the Pennsylvania Association of Justice. Both briefs largely agree with the trial court's cogent discussion of the relevant legal considerations.

to act as a professional and induces others to rely on their course of care (and thereby to eschew treatment elsewhere), to their detriment.

This Court has applied the following section of the Restatement (Second) which has been adopted in Pennsylvania:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
> (a) his failure to exercise such care increases the risk of such harm, or
> (b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323 (*see Scampone v. Grane Healthcare Co.*, 169 A.3d 600, 617 (Pa. Super. 2017)).[6]

Though Colangelo sees a parade of horribles in the trial court's ruling, this is a ruling on preliminary objections, not a verdict. Too much remains uncertain to deny a well-pled claim the process due. Because we discern no error of law in the well-reasoned trial court opinion, we affirm.

Order affirmed.

---

[6] *Scampone* also confirms that Section 324A of the Restatement (Second) of Torts, entitled "Liability to Third Person for Negligent Performance of Undertaking," has also been adopted in Pennsylvania. *See Id.*

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  8/24/2021