**Hudak-Bisset v. County of Lackawanna**

*Edward F. Chaker*, for plaintiff.
*Thomas J. Ratchford*, for defendants.

MINORA, *J.*, March 19, 2014—

## INTRODUCTION

Currently before the court is the plaintiff's motion for leave of court to file an amended complaint pursuant to Pennsylvania R.C.P. 1033. The motion of the plaintiff is granted with the proviso for a permissive interlocutory appeal pursuant to Pa. R.A.P. 312 due to this opinion's extension of existing law.

## FACTUAL AND PROCEDURAL HISTORY

This case arises from an automobile accident alleged to have caused injuries to George Hudak ("decedent"), on May 13, 2005. As originally pled, a bus, a common carrier owned and operated by the County of Lackawanna Transit System ("COLTS" or "defendants"), disregarded a stop sign and struck the vehicle that decedent was operating.

Decedent allegedly suffered severe and permanent injuries from the crash. Despite substantial treatment, decedent's condition allegedly did not improve. Supposedly due to his chronic, severe, permanent and debilitating pain, decedent committed suicide on September 11, 2011. Decedent left a suicide note, stating in part that he "could not take the pain he was experiencing every day and that the medicine was not working and he was tired of it." Decedent had lived with his pain for in excess of six years.

Prior to his death, decedent initiated an action by filing a complaint for negligence on May 2, 2007. Decedent also left a will naming Shannon Hudak-Bisset ("plaintiff") as the executrix of his estate. On December 5, 2011, a notice of death and a substitution of personal representative were both filed with the court. Plaintiff retained new counsel, the Law Offices of Gay, Chacker, & Mittin P.C., on or about August 2, 2013. Present counsel noted that the caption of the action had not been amended to reflect decedent's death. Counsel further noted that no amendment of the complaint had been sought following decedent's death to add claims based upon the wrongful death and survival act to their action. Plaintiff seeks leave of court to amend the complaint to add claims based upon the wrongful death act, 42 Pa. C.S.A. §8301, and the survival act, 42 Pa. C.S.A. §8302.

## ISSUE

Whether plaintiff's motion for leave of court to file an amended complaint should be granted, under Pa.R.C.P. 1033, to include claims based upon the wrongful death act and the survival act when the death resulted from plaintiff/ decedent's suicidal act?

## LEGAL STANDARD

Pursuant to Pennsylvania Rule of Civil Procedure 1033, any party may amend its pleading to add new causes of action by stipulation of other parties or by leave of court. Pa.R.C.P. No.1033. The amended pleading may aver transactions or occurrences, which have happened before or after the filing of the original pleading, even though they give rise to a new cause of action or defense. *Id.* Leave to amend is within the sound discretion of the trial court. *Reed v. Pray*, 53 A.3d 134, 143 (Pa. Commw. Ct. 2012). The trial court's determination will not be disturbed absent an abuse of that discretion. *Ash v. Cont'l Ins. Co.*, 593 Pa. 523, 525 (2007). Leave to amend pleadings is to be liberally granted. *Chaney v. Meadville Med. Ctr.*, 912 A.2d 300, 303 (Pa. Super. 2006); *Balletta v. Spadoni*, 47 A.3d 183, 201 (Pa. Commw. Ct. 2012). The policy underlying this rule of liberal leave to amend is to insure that parties get to have their cases decided on the substantive case presented, and not on legal formalities. *Chaney* at 303. "A party is to be given leave to amend its pleadings when allowing the amendment will not unduly prejudice or surprise the adverse party. Undue prejudice has been defined as something more than a detriment to the other party...." *Sarah E. Newman Revocable Trust v. B.E. Newman Inc.*, No. 2009-3064, 2009 WL 5909308 (Centre Co. 2009).

At issue in this proposed amendment to plaintiff's complaint is the vexing and complicated question of whether a plaintiff ought to be allowed to recover damages for a suicide allegedly secondary to accident related injuries and chronic pain caused by the tortfeasor's/defendant.

This issue is both vexing and complicated because it has

arisen in the numerous procedural contexts of preliminary objections to a complaint; motions for judgment on the pleadings and motions to amend complaints, motions for summary judgment and in motions in limine. All of these procedural contexts offer differing applicable legal standards which apply.

Additional issue complexity arises in the infinite variety of factual contexts within which our issue has arisen. These factual contexts can often offer a justifiable context for a decision without the resultant decision settling the issue in the context of stare decisis or a uniform statement of the law going forward.

Regardless of the variability of the procedural and factual contexts, what we are called upon to assess is the extent and duration of the duty and proximate cause which our common carrier defendant COLTS owes to the plaintiff decedent. The immediate limiting statement of the law in this area regarding the issue of duty and proximate cause is *McPeake v. William T. Cannan, Esq., F.C.*, 553 A.2d 439, 381 Pa. Super. 227 (1989). In *McPeake*, the defendant client's estate brought a legal malpractice action against the defendant alleging negligent legal representation in a criminal case which allegedly caused the criminal defendant to commit suicide. The trial court dismissed the complaint on preliminary objection in the nature of a *demurrer*. The Superior Court affirmed. In doing so, the Superior Court in *McPeake* stated that:

"Generally suicide has not been recognized as a legitimate basis for recovery in wrongful death cases. This is so because suicide constitutes an independent intervening act so extraordinary as not to have been reasonably foreseeable by the original tortfeasor."

*Id.* at 440-441.

The opinion went on to cite limited exceptions to this rule which are in the context of worker's compensation and mental health institutions and professionals and custodial relationships none of which are applicable in this case.

The precise issue crafted by the Superior Court in *McPeake* was, "... the questions is whether an attorney's duty of representation extends to protecting a client from his own suicidal tendencies."

The *McPeake* court went on to describe the elements of a legal malpractice claim; the first being the employment of the attorney or other basis for duty; the second being the failure of the attorney to exercise ordinary skill and knowledge; and third and finally, that such negligence proximately caused the plaintiff's injuries.

Citing *Hamil v. Bashline*, 481 Pa. 256, 265, 392, A.2d 1280, 1285 (1978), the *McPeake* court stated that once a plaintiff has established that a duty of care exists and then is breached the plaintiff must still establish a causal connection between the defendant's negligent conduct and the plaintiff's injuries. *McPeake* at 441.

In defining proximate cause or legal causation, *McPeake* stated:

"'Proximate' or 'legal' causation in turn is defined as '[t]hat which, in a natural and continuous sequence, unbroken by a sufficient intervening cause, produces injury and without which the result would not have occurred.' *Wisniewski v. Great Atlantic and Pacific Tea Company*, 226 Pa. Super. 574, 582, 323 A.2d 744, 748 (1974)."

The *McPeake* opinion then cited Prosser on torts noting his comments on proximate cause in which Prosser states that proximate cause, "...becomes essentially a question of whether the policy of the law will extend responsibility for the conduct to the consequences which have in fact occurred." *McPeake* at 442, 223.

Framing the proximate cause issue differently, *McPeake* states, "...so an issue of whether the defendant is under any duty to the plaintiff, or whether his duty includes protection against such consequences." *Id.*

Additionally, *McPeake* states, "[t]hus, a defendant will not be found to have had a duty to prevent a harm that was not a reasonably foreseeable result of the prior negligent conduct." *Id.*

The stated rationale was that in the interests of fairness, it would not be fair to impose a duty upon persons to prevent a harm that they could not foresee or avoid.

Concluding, *McPeake* has determined suicide is generally an independent intervening act so extraordinary as to not have been reasonably foreseeable by the original tortfeasor. Therefore, the court held as a matter of law that the attorney's alleged negligence could not be the proximate cause of the decedent's suicidal injuries since said injuries were not foreseeable. They then narrowly concluded that an attorney's duty to provide adequate representation does not encompass the duty to foresee and protect a client from his own possible suicidal tendencies.

Citing a string of cases which rigidly follow *McPeake*, common carrier defendant COLTS urges us to come to the same conclusion regarding COLTS responsibility to suicide decedent George Hudak.

Pennsylvania state courts and federal courts applying Pennsylvania law appear to have consistently relied on the *McPeake* decision. *See Ferris v. Cleveland*, Civil Action No. 3:10-1302, 2012 WL 2564782 (M.D. Pa. 2012) (granting a motion *in limine* that excluded testimony of a neuropsychologist to identify the causal relationship between a motor vehicle accident and the decedents suicide); *Puza v. Carbon County*, 586 F.Supp.2d 271 (M.D. Pa. 2007) (holding that architects who designed prison were not liable for pretrial detainee's suicide); *Cooper v. Frankford Health Care System, Inc.*, 960 A.2d 134 (Pa. Super. 2008) (explaining that a hospital did not owe duty to protect anesthesiologist from harming himself after confronting him with drug abuse allegation).

However, there is a singular case that is distinguished from the *McPeake* case and the cases that follow. In *Mackin v. Arthur J. McHale Heating & Air Conditioning Co., Inc.*, 76 Pa. D. & C.4th 544 (Lacka. Co. 2005), the plaintiff, who was the administratrix of decedent's estate, claimed that the decedent's suicide was a direct result of injuries and the decedent's subsequent inability to alleviate his resulting pain and depression suffered in a motor vehicle accident. The accident was caused by the negligence of the defendant's employee while working within the course and scope of his employment. The plaintiff amended their complaint to include wrongful death and survival claims and the court denied the defendant's preliminary objection in the nature of demurrer. The court held that "the view that suicide is always an independent intervening action relieving a tort-feasor of liability is too restrictive...[and the] jury should be given an opportunity to determine whether the defendants' actions are the proximate cause of the decedent's suicide." *Id.* at 549. In it's reasoning, the

Mackin court distinguished the facts before it from those in *McPeake*.

Before we adopt *McPeake's* position, it is necessary to point out that under *McPeake's* unique facts one of the court's rationale was the public policy of not discouraging attorney's from representing "unstable" criminal defendants. Once again, this case involved preliminary objections, not a motion to amend, so different legal standards apply.

An additional distinction is that COLTS as a bus company and common carrier is held to a higher degree of care. *Lynch v. McStome and Lincoln Plaza Assoc.*, 548 A.2d 1276,1279 (Pa. Super. 1988). Some cases say to the highest degree of care. *Lebanon Coach Co. v. Carolina Cas. Inc. Co.*, 675 A.2d 279 (Pa. Super. 1996), *appeal denied* 687 A.2d 378 (Pa. 1997).

Some cases are also factually distinguishable from our case in that they needed opinion testimony from experts to establish causation whereas our facts are that George Hudak left a suicide note establishing that chronic pain secondary to his accident with common carrier defendant COLTS led him to take his own life.

Exhibit E to plaintiff's motion for leave to amend complaint is plaintiff/decedent George Hudak's suicide note. It is marked as "found on deceased by police and/or coroner." The note is addressed to George Hudak's mother and in relevant portions it reads as follows:

"Dear Mom,

I'm sorry but I can't take this pain every day depending on the weather. The pain medication is not working and

I am just tired of this.

We will meet again I'm sure.

...There is no passion in my life anymore Woman, sports, lottery games nothing."

The court surmises that this statement is offered to prove the truth of these matters asserted and to relate the decedent's represented condition to the motor vehicle accident with COLTS herein.

If so, it would have to qualify as an exception to the hearsay rule in order to be admitted. Our review of the Pennsylvania Rules of Evidence indicates that the hearsay exception at Pa.R.E. 803(3) state of mind exception to the hearsay rule would apply.

The state of mind hearsay exception is set forth in Pa.R.E. 803(3). It states:

"The following statements, as hereinafter defined, are not excluded by the hearsay rule, even though the declarant is available as a witness:

(3) Then existing mental, emotional, or physical condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition, such as intent, plan, motive, design, mental feeling, pain, and bodily health. A statement of memory or belief offered to prove the fact remembered or believed is included in this exception only if it relates to the execution, revocation, identification, or terms of declarant's will."

This exception is irrelevant if the statement is not being introduced to prove the matter asserted. However, where

a statement is being introduced for the truth of the matter asserted, then it may be admissible if it is a declaration concerning "the declarant's then existing state of mind... such as intent, plan, motive, design, mental feeling, pain, and bodily health." Pa.R.E. 803(3). Of course, the statement must be relevant to the issue in the case. *Schmalz v. Manufacturers & Traders Trust Co.*, 67 A.3d 800, 803-804 (Pa. Super. 2013).

There are ordinarily three instances in which the state of mind exception is applicable. First, the exception may apply to prove the declarant's state of mind when that state of mind is an issue directly related to a claim or defense in the case. Second, the exception can apply to demonstrate that a declarant did a particular act that was in conformity with his or her statement after having made the statement. Finally, an out of court statement related to the person's memory or belief is admissible in the limited instance where it relates to the "execution, revocation, identification or terms of the declarant's will." *Id.* at 804-805. (citation omitted).

In our case, we conclude that Mr. Hudak's suicide note falls under this hearsay exception. It is being used to prove the matter asserted: that the suicide of Mr. Hudak was factually caused by the automobile accident and the injuries and pain resulting therefrom. However, the suicide note, written by Mr. Hudak, speaks directly to his then existing mental state; including his state of mind, "I can't take this pain...[t]he pain medication is not working and I'm just tried of this," intent, plan, motive, mental feeling, pain, and bodily health. He specifically talks about his pain and bodily health in his note. He speaks to how he feels, both mentally and physically. He states his intent

and reasoning for committing his eventual suicide, "...no passion in my life anymore..."[1] The suicide note speak directly to what is at issue in the pending litigation: the casual connection between the injuries and pain suffered in the automobile accident and Mr. Hudak's suicide. The suicide note of Mr. Hudak shows his action, his eventual suicide, is in direct conformity with his written suicide note. For the reasons stated above, Mr. Hudak's suicide note falls under the "state of mind" exception, 803(3), to the evidentiary hearsay rule.

In the Lackawanna County case of *Mackin v. Arthur J. McHale Heating & Air Conditioning Co., Inc.*, 76 Pa. D. & C.4th 544 (Lacka. Co. 2005), Senior Judge S. John Cottone issued an opinion on May 19, 2005 standing as the only opinion, this court's research revealed, which is contrary to *McPeake*. As noted, this case involved preliminary objections to the complaint.

The gravamen of the complaint is that Thomas Mackin was stopped in traffic when he was rear ended by Justin Burkhart driving a truck while in the scope of employment and acting as an agent for defendant. Numerous injuries to the plaintiff caused severe pain requiring narcotic pain medication to control. Plaintiff decedent became dependent upon the medication, eventually committing suicide. Plaintiff argued the suicide was the direct result of injuries caused by the motor vehicle accident and decedent's inability to alleviate his resulting pain and depression. The complaint was amended to add wrongful death and survival act claims. The defendant filed preliminary objections in the nature of a *demurrer* and a

---

1. Suicide note Exhibit E to plaintiff's motion for leave to amend complaint.

motion to strike. The court denied defendant's *demurrer* and struck an offending paragraph.

The *Mackin* case also revealed that the Pennsylvania *McPeake* position, though consistently upheld, is often contradicted by views from other states. *Mackin* cites cases contrary to *McPeake's* position from the states of Delaware, Indiana and California.

Pa.R.C.P. 1033 entitled "amendment" governs our dispute and it states as follows:

> "A party, either by filed consent of the adverse party or by leave of court, *may at any time change the form of action*, add a person as a party, *correct the name of a party*, or otherwise amend the pleading. The amendment pleading *may aver transactions or occurrences which have happened before or after the filing of the original pleading, even though they give rise to a new cause of action* or defense. An amendment may be made to conform the pleading to the evidence offered or admitted" (emphasis added).

Plaintiff's suicide occurred after the cause of action was filed thus necessitating amending the name of the plaintiff and changing the form of the cause of action. Ostensibly, the amendments sought would seem to work within the confines of Pa.R.C.P. 1033, but COLTS says no. COLTS states that *McPeake* and its' progeny substantively bar plaintiff's proposed amendments. Conversely, plaintiff states that they ought to be given the opportunity to try and plead a valid amendment. Therein lies the core of the dispute. Cases interpreting Pa.R.C.P. 1033 provide that trial courts generally ought to exercise their discretion to permit amendment. *The Brickman Group. Ltd. v. CGU*

*Ins. Co.*, 865 A.2d 918, 926-927 (Pa. Super. 2004). That same admonition of liberal construct of civil rules and amendments, likewise also contains limiting advice. *Brickman* also states where a party will be unable to state a claim upon which relief could be granted, leave to amend should be denied. *Id.* at 127.

So can the plaintiff state a lawful claim upon which relief can be granted? Strict adherence to *McPeake* and its progeny would deny that ability but other governing law may leave that door ajar, if not open.

The case of *McNeil, Jr. v. Jordan*, 586 Pa. 413, 894 A.2d 1260 (2006) dealt with an amendment issue in the context of a testamentary dispute. In this case, plaintiff sought pre-complaint discovery in order to further amend a disputed earlier complaint. Our Superior Court determined that in order to achieve their desired result, plaintiffs had to show good faith as well as probable cause that the information sought is both material and necessary to the drafting of the complaint. *Id.* at 443-444, 894 A.2d at 1278.

In reaching their conclusion, our Supreme Court disagreed and needed to rule out the Superior Court's erroneous "probable cause" standard. To accomplish this, the Supreme Court referenced the Dragonetti Act at 42 Pa. C.S.A. §8532. They looked at the act's definition of probable cause and the elements of the offense. They observed that a person has probable cause for initiating suit if he reasonably believes in the existence of the facts upon which his claim is based and either: (1) reasonably believes that under those facts the *claim may be valid under the existing or developing law*. *McNeil* at 439, 894 A.2d at 1276 (emphasis added).

Our plaintiff essentially argues that due to factual and procedural variation and due to disputes in other jurisdictions, we ought to view this dispute as an area of developing law and afford liberal view towards amending the complaint.

In this view, the case of *Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672 (1979) gives us guidance. This case involved recovery of damages for negligently caused mental trauma suffered by a bystander (mother) not being precluded merely on the basis that they were outside of the zone of danger of being struck by the negligent force. The mother observed her child being struck and killed by an automobile. The dispute was over preliminary objections in the nature of a *demurrer*.

The *Sinn* court stated that:

"...where the propriety of an order sustaining a demurrer is being reviewed by a court of last resort, the *fact that the theory for recovery relied upon has not been previously sanctioned is not conclusive*. It must be remembered that *'[e]very cause of action.... however, was once a novel claim, and the absence of Pennsylvania authority for appellant's proposition is not an end to the issues.'Papieves v. Kelly*, 437 Pa. 373, 376-377, 263 A.2d 118, 120(1970)" (emphasis added).

*Sinn* at 150, 404 A.2d at 674.

A review of the evolution of the tort of negligent conduct causing only emotional distress is illustrative of the *Sinn* court's proposition. In a period of about twenty years, Pennsylvania evolved from a jurisdiction that barred recovery for the consequences of fright and shock negligently inflicted, absent contemporaneous impact.

*Bosley v. Andrews*, 142 A.2d 263 (Pa. 1958). This was known as the impact rule.

It moved to a less restrictive proposition which afforded plaintiffs a potential recovery where the plaintiff was in personal danger of physical impact because of the direction of negligent force against him and where plaintiff did actually fear the physical impact. *Neiderman v. Brodsky*, 261 A.2d 84, 90, 436 Pa. 401 (1970). This was otherwise known as the zone of danger theory or rule.

Finally, to the present state of the law which affords potential recovery by a parent who witnesses an injury to his or her child, although not in the zone of danger on the basis that the parents injury is foreseeable. *Sinn v. Burd*, *supra*.

In essence, this was the creation of a new type of emotional cause of action or tort because Mrs. Sinn was seeking her own damages for her own emotional injuries sustained as a result merely of witnessing the accident. The contemporaneous observation or perception of the accident has been held to be an absolute requirement for recovery of damages in a negligent infliction of mental distress case.

Our plaintiff seeks the right to amend or pled wrongful death and survival act counts in the context of plaintiff's suicide despite *McPeake* and its progeny. Their argument is that like the evolution of the tort noted above this claim may be valid under existing law or developing or evolving law. *Mackin*, *supra* (*See* other states).

That is but one argument, but in order to give this issue more complete treatment it is necessary to address the rationale of *McPeake* which underlies the holding therein

that suicide amounts to an independent intervening act so extraordinary as not to have been foreseeable by the original tortfeasor.

In *Sinn*, Justice Nix stated that as society grows more complex and interwoven in its relationships then, greater responsibility must be accepted for his or her conduct. *Sinn* at 163-164,404 A.2d at 681. In applying this modern standard to a duty of care analysis, Justice Nix stated, "...the concept of duty amounts to no more than, 'the sum total of those considerations of policy which led the law, to say that a particular plaintiff is entitled to protection' from the harm suffered." *Id.*

Justice Nix went on to further quote Dean Prosser for the proposition, "There is a duty if the court says there is a duty; the law like the constitution is what we make it. Duty is only a word with which we state our conclusion that there is or is not to be liability...."

Later in *Sinn*, Prosser is further quoted regarding duty that, "...the problem of duty is as broad as the whole law of negligence, and that no universal test for it ever has been formulated.... 'duty'... but only an expression of the total sum of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." *Sinn* at 165, 404 A.2d at 682 (citing Prosser, Torts 53 (4th Ed. 1971)).

So the threshold issue is whether or not a duty exists and if it is not so should the plaintiff still be allowed to test the limits of the existing law and be allowed to plead it as a developing area of the law. In order to answer this question, we must return to *McPeake, supra*, and explore more comprehensively not only its conclusions, but the

stated rationale for those conclusions.

The facts in *McPeake* are perhaps more compelling than our facts herein. On July 11, 1985, appellant decedent Robert T. McPeake was arrested for burglary, rape, indecent assault, corrupting the morals of a minor and possession of the instruments of a crime. Mr. McPeake chose to go to trial and on August 18, 1986 after a jury found decedent guilty on all counts, he suddenly jumped from a closed fifth floor court room window and killed himself.

Decedent's estate filed a legal malpractice case against Robert T. McPeake's criminal defense counsel and included counts for wrongful death and survival act claims which drew preliminary objections in the nature of a *demurrer*. The trial court granted the objections stating,

> "The court concludes as a matter of law, assuming the malpractice or negligence of [appellee] is true as alleged, that jumping out a window is not foreseeable and therefore, the alleged actions or omissions of [appellee] are not the proximate or legal cause of [decedent's] injuries. The court will not elaborate further as this issue is a matter of common sense. Trial court opinion at 1."

*McPeake* at 442.

The Supreme Court concurred with the trial court and stated in quoting the case of *McLaughlin v. Sullivan*, 123 N.H. 335, 461 A.2d 1231 (1983), a New Hampshire case that:

> "The court held that a lawyer's duty of representation does not extend to protecting a client from his suicidal

tendencies and thus proximate causation could not be established as a matter of law. We agree with the McLaughlin court and adopt its holding as a matter of Pennsylvania law."

*McPeake* at 442.

When you look at the holding and seek to answer why, both the trial court and the Superior Court answer. The trial court *McPeake, op. cit.* at 442-233 states, "...jumping out of a window is not foreseeable and therefore the alleged actions or omissions of [appellee] are not the proximate or legal cause of [decedent's] injury." *Id.* The trial court tells us their rationale was that decedent's actions could not be foreseeable therefore they cannot act as harm which would impose duty on his trial counsel even if trial counsel were wrong. This appears to be a subjective standard arising out of the specific facts of this case.

The Superior Court agrees stating, "Suicide has been recognized as an act that is so extraordinary as to not be reasonably foreseeable and thus courts have held that it is not the type of harm that can proximately result from ordinary negligence." This appears to be a more objective and blanket statement not related to the specific facts of the case until we later review the Superior Court's own statement of its findings. In *McPeake*, the Superior Court states,

"We find *the connection between negligence in the practice of law and the harm which befell the decedent in the case to be simply too attenuated* to impose legal liability on the part of the defendant." Emphasis added.

"...because an attorney does not possess the ability either

to perceive that a client is likely to commit suicide or to prevent suicide we *will not impose liability upon him for failing to prevent a harm that is not a foreseeable result of prior negligent conduct.*"

*Id.* at 443.

The inverse of the above quote can at least be read to presume that the Superior Court would or could impose liability on a defendant in a suicide case if it was the foreseeable result of prior negligent conduct. In fact that is the rationale and basis for holding certain treatment centers and professionals responsible in suicide settings because their training and expertise makes foreseeability more acute.

In applying these *McPeake* lessons to our facts, is it foreseeable that a motor vehicle accident can cause severe harm and pain to its victims? Is it still foreseeable that the severe harm or pain can defy treatment and become chronic? Finally, is it foreseeable that such severe chronic pain can lead to depression and suicide? As the trial court stated in *McPeake*, "The court will not elaborate further as this issue is a matter of common sense." *Id.* at 442. It is also noteworthy that this was very similar to the *Mackin* case fact pattern.

Should such a logical and direct chain of causation be determined to be "...too attenuated to impose legal liability on the part of the defendant?" *Id.* at 443. We think not. We believe such a blanket, all encompassing view to be very narrow and restrictive. Not all suicides in every conceivable procedural and factual posture can totally be deemed to be "...so extraordinary as to not be reasonably foreseeable..." *Id.* at 442. This brush paints too broadly.

We know this to be the case due to the statutory exception in the worker's compensation statute, 77 P.S. §431 and also due to the exceptions for hospitals, mental hospitals, and mental health professionals.

These exceptions exist because their specialized training and expertise qualifies them with greater foreseeability of the harm that their deviations from the standard of care can cause.

Arguably, one can allege that is why there exists a general rule that suicide is generally deemed not foreseeable with only those delineated and limited exceptions. The response to such an argument is that specific facts generated those cases and statutes which were created to address exceptions and inequities in the general rule. Plaintiff argues their case also needs to be amended to plead and address inequities which arise out of application of the general rule to the facts in their case.

In the case of *Campo v. St. Luke's Hosp.*, 755 A.2d 20, 23-24 (Pa. Super. 2000), the Superior Court did a duty analysis starting with the elements of a negligence based cause of action stating, "[i]t is axiomatic that the elements of a negligence based cause of action are a duty, breach of that duty, a causal relationship between the breach and the resulting injury and actual loss." *J.E.J. v. TriCounty Big Brothers/Big Sisters*, 692 A.2d 582 (Pa. Super. 1991).

*Campo*, goes on to speak to duty stating that, "[w]hether a duty exists is ultimately a question of fairness. The inquiry involves a weighing of the relationship of the parties, the nature of the risk and public interest in a proposed solution." *Campo* at 23-24.

The *Campo* court goes on to characterize duty as

amounting, "...to no more than 'the sum total of those considerations of policy which led the law to say that the particular plaintiff is entitled to protection' from the harm suffered."

Lastly, *Campo*, tells us, "[i]t is only when the question of foreseeability is undeniably clear may a court rule as a matter of law that a particular defendant did not have a duty to a particular plaintiff." *Id.*

COLTS defendant urges that this court should find such clarity in the general rule out of *McPeake* that suicide is such an independent, unpredictable intervening act that it is not foreseeable. Plaintiff decedent would urge us to allow their complaint amendments to challenge the general rule due to the unbroken logical chain of causation that their facts present, including the note that ties it all together without the need for expert testimony.

To determine whether such duty should be found to exist, the case of *Althaus v. Cohen*, 562 Pa. 547, 553, 756 A.2d 1166,1169 (Pa. 2000) written by our Supreme Court establishes a five part test.

> "The determination of whether a duty exists in a particular case involves the weighing of several discrete factors which include; (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and the foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution."

The case of *Commerce Bank/Pennsylvania v. First Union Nat. Bank*, 911 A.2d 133 (Pa. Super 2006) also conducted a similar five factor analysis so we too shall

attempt a similar exercise.

### The Relevance Between the Parties

The first factor we are directed to review is the relationship between the parties. As *Commerce Bank*, tells us, "[d]uty is predicated on the relationship that exists between the parties at the relevant time." *Id.* at 138. According to the facts pled, there was no relationship between the parties until COLTS, a common carrier with a higher standard of care ran a stop sign striking plaintiff's motor vehicle, thus establishing the relationship of tortfeasor and injured party. Accordingly, this factor would support the finding of a duty. Obviously, the extent of that duty pre and post suicide is debatable.

### The Social Utility of the Actor's Conduct

There exists no social utility that this court can discern when someone runs a stop sign and harms another party. This utility is further diminished when the defendant tortfeasor is a common carrier from which a higher standard of care is expected. This factor, based upon logic and common sense, would seem to support a finding of duty.

### The Nature of the Risk and the Foreseeability of the Harm Incurred

Regarding this third factor, it is axiomatic that duty arises only when one engages in conduct which foreseeably creates an unreasonable risk of harm to others. *Id.* at 139.

The test is whether the harm to our plaintiff/decedent was foreseeable in the first instance. *Id.* The argument of COLTS seems solely directed to the post suicide related harm.

Here our tortfeasor was operating a bus, a common carrier, which experience tells us is a much larger and heavier vehicle than an automobile. Here our tortfeasor, a common carrier, operating a bus is alleged to have run a stop sign striking plaintiff who was operating his motor vehicle. Applying duty to the conduct thus far seems undisputed. The COLTS bus had a duty to plaintiff/decedent to operate their bus safely. As a result of this accident, plaintiff/decedent, despite treatment, becomes afflicted with severe, debilitating chronic pain. That pain leads to depression which leads to suicide. Not an unheard of nor necessarily a rare or uncommon occurrence. *See Mackin.*

Decedent tells us what happened in his suicide note stating in part that he, "could not take the pain he was experiencing every day and that the medicine was not working and he was tired of it." No need for expert testimony here. The plaintiff tells us that after six years of pain "he was tired of it."

When you crash into a car while operating a bus is such a chain of causation sufficiently foreseeable? We think that logic and our life's experience make it sufficiently foreseeable to reexamine the existing suicide doctrine bar and to allow the complaint to be amended. A look at the interpretation of the worker's compensation exception at 77 P.S. §431 by our Supreme Court in the case of *Globe Security Systems v. Workman's Compensation Appeals Bd.(Guerrero)*, 518 Pa. 544, 550, 544 A.2d 953,957 (Sup. 1988) is instructive. In that case, our Supreme Court said, "[i]f the injury so acts upon the will that it is not operating independently at the time of the suicide then the chain of causation is clear, since there is no independent

intervening cause."

Using this rationale and based upon our facts, there exists sufficient foreseeablity to support a finding of duty.

### The Consequences of Imposing a Duty Upon the Actor

Here the consequences of imposing duty upon the actor would not be onerous. The consequences already exist here and the potential for amendment of plaintiff's complaint herein would only be expanding the extent of those existing consequences.

In expanding the extent of the duty of the defendant to encompass plaintiff/decedent's suicide that directly arises out of the chain of causation from the accident, we are placing responsibility where existing law would already place the liability but expanding its' extent. All the amendments proposed would do would be to potentially encompass suicide causally arising out of the accident. We believe this factor supports a finding of duty.

### The Overall Public Interest in the Proposed Solution

The public interest in such a duty analysis which would potentially expand duty to encompass a causally related suicide would seem to be a matter of significant public interest. By entertaining this notion of expanding duty to encompass a causally related suicide as foreseeable and therefore compensable, the impact would seem to potentially impact upon all the motoring public. After all, the plaintiff/decedent did not take his own life because of a failed emotional relationship or some other reason unrelated to the accident. The chain of causation relating back to this accident is clear.

Where should public policy place the risk of liability in

such a scenario? Does it belong in the deceased plaintiff whose life was ruined by the chain of consequences and causation solely arising from the accident because it robbed him of his will to live and ultimately he committed a causally related suicide? We think not. The risk of liability ought to remain with the tortfeasor, the common carrier, who began this tragic cascade of circumstances which cumulated in a suicide.

By allowing the expansion of duty to overcome the bar of suicide because the chain of causation implicates the accident related reason for the suicide we are placing responsibility where it belongs on the common carrier tortfeasor.

This factor weighs in favor of finding duty.

Factual Cause Analysis

Much as the concept of negligent infliction of emotional distress has evolved over the years, as noted above, so has the concept of causation as a component part of tort claims.

When addressing causation the substantial factor test from the Restatement (Second) of Torts §431(1) 1965 had been cited with approval by Pennsylvania Courts. *Whitner v. Lojeski*, 263 A.2d 889 (Pa. 1970). If an action was determined to be a substantial factor in causing harm then the injured party could prevail.

This concept became confusing to jurors who deliberated in tort cases. Therefore other concepts such as foreseeability or the natural and probable consequences of an act were also used. As noted at Pa. S.S.J.I. §13.20 subcommittee note, "natural and probable consequences

is merely another synonym for 'foreseeability.'"

Other terms such as "legal cause," "efficient cause," "substantial contributing factor" and "proximate cause" all emerged in an attempt to make the concept of causation understandable to jurors and others.

In *Grainy v. Campbell et al.*, 493 Pa. 88, 89, 425 A.2d 379, 380 (1981) our Supreme Court overruled the case of *Kline v. Mover*, 325 Pa. 357, 191 A.2d 43 (1937) and decided that the intervening negligent act of a second actor would not discharge nor extinguish the first actor's liability for antecedent negligence. The rationale was that the first tortfeasor should have had a "realizable likelihood" that their negligent actions could have caused an accident such as occurred with the second tortuous actor. *Grainy* at 92, 425 A.2d at 382. They said the circumstances were not "highly extraordinary" which was another way of saying that the danger was foreseeable. *Id.* at 93, 425 A.2d at 382.

The court relied on Prosser for his observations that "this becomes essentially a question of whether the policy of the law will extend the responsibility for the conduct to the consequences which have in fact occurred." *Id.*

The issue herein: Is chronic pain, depression and suicide a "realizable likelihood" in our case? If so, should it matter whether the second actor's conduct is negligent or intentional? This arguable extension goes to the root of Professor Prosser's policy question. We know it should not extinguish the first actor's negligence but should the first party's negligence extend to the consequences which have in fact occurred.

For guidance to answer to this question, I refer to the Pennsylvania Suggested Standard Jury Instructions on

Factual Cause at section 1320. The court recognizes that these instructions are not binding statements on the law but they are recognized as "nonetheless instructive." *Gorman v. Costello*, 929 A.2d 1208, 1213 (Pa. Super. 2007).

The instruction for §1320 factual cause would read as follows in our case:

In order for the plaintiff, Estate of George Hudak to recover in this case, the defendant, COLTS' negligent conduct must have been a factual cause in bringing about harm. Conduct is a factual cause of harm when the harm would not have occurred absent the conduct. To be a factual cause, the conduct must have been an actual, real factor in causing the harm, even if the result is unusual or unexpected. A factual cause cannot be an imaginary or fanciful factor having no connection or only an insignificant connection with the harm.

To be a factual cause, the defendant COLTS' conduct need not be the only factual cause. The fact that some other causes concur with the defendant's negligence in producing an injury does not relive the defendant COLTS from liability as long as his own negligence is a factual cause of the injury.

Clearly, COLTS' alleged negligence is a factual cause on bringing about the harm because the harm would not have occurred absent the conduct. If we define our harm as the chronic pain alleged to have been sustained by decedent Hudak then the conduct of COLTS would be an actual real factor in causing the harm "...even if the result is *unusual or unexpected*." (emphasis added). Doesn't an unusual or unexpected result define Hudak's suicidal act?

Further, to be a factual cause of the harm, COLTS' conduct need not be the only factual cause. The fact that some other causes concur with COLTS' negligence in producing an injury does not relieve COLTS from liability as long a COLTS' own negligence is a factual cause of the injury.

Case law supports this instruction as a rule of law and not simply a suggested instruction that is nonetheless instructive. *Gorman, supra.* at 1213.

"Proximate cause is defined as a wrongful act which is a substantial factor in bringing about the plaintiff's harm." *Lux. V. Gerald E. Ort Trucking, Inc.,* 887 A.2d 1281, 1286 (Pa. Super. 2005). The question of whether defendants' negligence was a proximate cause of the injury is ordinarily one to be decided by the fact finder. *Quinby v. Plumsteadville Fam. Prac. Inc.,* 907 A.2d 1061, 1077 (Pa. 2006).

"In order for the plaintiff to recover in this case, the *defendant's [negligence]* [reckless] [intentional] *conduct must have been a factual cause in bringing about harm. Conduct is a factual cause of harm when the harm would not have occurred absent the conduct. To be a factual cause, the conduct must have been an actual, real factor in causing the harm, even if the result is unusual or unexpected.* A factual cause cannot be an imaginary or fanciful factor having no connection or only an insignificant connection with the harm.

*To be a factual cause, the defendant's conduct need not be the only factual cause. The fact that some other causes concur with the negligence of the defendant in producing an injury does not relieve the defendant*

*from liability as long as [his] [her] own negligence is a factual cause of the injury."* Emphasis added.

*Irey v. Com., Dept. of Transp.,* 72 A.3d 762,772 (Pa. Commw. 2013) (citations omitted).

The *Lux* case was also cited in *Commerce Bank Pennsylvania v. First Union Nat. Bank,* 911 A.2d 133,141 (Pa. Super. 2006).

In *Commerce Bank,* the court stated the concept of proximate cause at length:

"It is beyond question that the mere existence of negligence and the occurrence of injury are insufficient to impose liability upon anyone as there remains to be proved the link of causation. Furthermore, our Supreme Court has stated that even when it is established that the defendant breached some duty of care owed the plaintiff, it is incumbent on a plaintiff to established a causal connection between defendant's conduct, and it must be shown to have been the proximate cause of plaintiff's injury.

Proximate causation is defined as a wrongful act which was a substantial factor in bringing about the plaintiff's harm. Proximate cause does not exists where the causal chain of events resulting in plaintiff's injury is so remote as to appear highly extraordinary that the conduct could have brought about the harm.

Proximate cause is a question of law to be determined by the court before the issue of actual cause may be put to the jury. A determination of legal causation, essentially regards whether the negligence, if any, was so remote that as a matter of law, the actor cannot be held legally

responsible for the harm which subsequently occurred. Therefore, the court must determine whether the injury would have been foreseen by an ordinary person as the natural and probable outcome of the act complained of.

The following considerations are in themselves or in combination with one another important in determining whether the actor's conduct is a substantial factor in bringing about harm to another:

(a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it;

(b) whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible; [and]

(c) lapse of time.

*Lux* at 1286-1288 (citations, brackets, and ellipses omitted), *appeal denied*, 587 Pa. 731, 901 A.2d 499 (Pa.2006).

In the quote noted above a number of significant features are noted. First, proximate cause is defined as a wrongful act (breach of duty) which was a substantial factor in bringing about the plaintiff's harm.

Second, proximate cause does not exist where the causal chain of events is so remote as to appear highly extraordinary. Obviously, *McPeake* says suicide is such a highly extraordinary act. We argue per *Grainy*, that under the circumstances of our case a suicide can be viewed as a "realizable likelihood" is a synonym foreseeable. *Grainy*

at 381.

Third, abinitio, proximate cause is a question of law to be determined by the court before the issue can be presented to the jury. The court assesses whether the causation and cause would be foreseeable by an ordinary person. Arguably "realizable likelihood" is a term which can be viewed as a synonym for foreseeable.

Finally, there are the three factors which are important in determining whether the actor's conduct arises to the level of a substantial factor in bringing about harm to another.

The first and second items go to the analysis of whether a suicide can be such a factor or is it so extraordinary as to breack the chain of causation. COLTS urges on the court that suicide is such a factor and it addresses *McPeake* and its progeny in support.

In *Sinn*, the court outlines an objective reasonable man standard for foreseeability and it states that a foreseeability analysis:

> "...contemplates that courts on a case-to-case basis analyzing all the circumstances will decide what the ordinary man under such circumstances should reasonably have foreseen. The courts thus mark out the areas of liability excluding the remote and unexpected."

*Sinn* at 171, 404 A.2d at 685.

This directive by our Superior Court in *Sinn*, *supra*. would seem to overrule the subsequent Supreme Court rule in *McPeake*, *supra*. as there is no blanket free pass for a suicide act as *McPeake* espouses. But rather the trial court must assess the areas of liability on a case-to-

case basis analyzing all the circumstances and then the court must exclude the remote and unexpected. Arguably, a factual scenario can exist where a suicide may not be remote and unexpected.

In attempting to read *Sinn, supra.* in a manner which also shows deference to *McPeake* we must then use the three factors from *Commerce Bank,* to determine whether the actor's conduct is a substantial factor in bringing about harm to another. *Commerce Bank* at 141.

The first factor instructs us to look at the number of factors which contribute to producing the harm and the extent of the effect they have on producing it.

Here, we have decedent's suicide note and the pleadings to assist our efforts. These documents show the common progression from a motor vehicle accident involving motor vehicles of disproportionate weight.

A bus hits a car, causing injuries to the occupant of the smaller, lighter vehicle result. These injuries cause pain which became chronic and unremitting despite treatment. After six years, plaintiff becomes depressed due to his pain, he grows tired of his condition and kills himself.

The next factor addresses whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces from which the actor is not responsible.

COLTS believes and argues and urges this court to follow *McPeake* and its progeny which would cause decedent's suicide to break the continuous and active operation of the forces.

Plaintiff in essence states that the suicide is the "realized likelihood" of the accident per *Grainy*. *Grainy* at 381. They further urge we find per *Sinn*, that an objective reasonable standard of foreseeability ought to control and the facts ought to be viewed on a case by case basis. *Sinn* at 171,404 A.2d at 685. Therefore, the *McPeake* blanket suicide bar automatically applicable in all cases should be overturned.

The last factor here is the lapse of time. While six years is a long time, arguably, in this case, the passage of time only increased the severity of the impact of chronic pain. Doctors cannot tell you a specific time frame when unremitting pain becomes classified as chronic. Nor is there a precise calendar as to when that chronic pain will lead to depression and self harm, if ever. That is precisely why *Sinn*, contemplates, "...that courts on a case-to-case basis analyzing all the circumstances will decide what the ordinary man under such circumstances should reasonably have foreseen." *Id.*

This analysis of foreseeability mandates a case-to-case review and not blanket suicide bar as contemplated by *McPeake*. Rarely does one size fit all and this doctrine of an absolute bar due to suicide per *McPeake* screams to be revisited.

## CONCLUSION

The Dragonetti Act and *Sinn v. Burd* tells us that it is allowable to test the law and logical extension of it. Prosser and Justice Nix tell us that there is no universal test for duty.[2] Senior Judge Cottone concluded in *Mackin*

---

2. These quotes and references to Prosser also appear in *Althaus v. Cohen*, 562 Pa. 547,756 A.2d 1166 (2000).

that, "[t]he view that suicide is *always* an independent intervening act relieving the tortfeasor of liability is too restrictive." *Mackin* at 549. For purposes, of allowing the amendments contemplated by Pa.R.C.P. 1033 and its liberal interpretation we concur with all of the above authorities. Plaintiff ought to be allowed to determine that, if a duty exists, and if so, does the duty extend to encompass plaintiff's alleged causally related suicide.

Finally, in recognition of the expansive view of this area of the law by this trial court, we would favorably entertain a request by either counsel to take an interlocutory appeal to the Superior Court by permission pursuant to Pa.R.A.P. 312.

This course of action is advised to firmly establish this court's conclusion as to the law of this case and not to have to further test it at the preliminary objection stage, the motion for judgment on the pleadings stage, the motion for summary judgment stage and the motion in limine stage.

It is also this court's intention that this opinion would act as an opinion in support of our order allowing the proposed amendments to plaintiff's complaint pursuant to Pa.R.A.P. 1925.

In this court's sound discretion, plaintiff's motion for leave of court to file an amended complaint is granted.

## MEMORANDUM AND ORDER

And now, this 19th day of March 2014, plaintiff's motion for leave of court to file an amended complaint is hereby granted.